# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY TUTT, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV418-183 |
| COASTAL STATE PRISON, *et al.*, | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Michael Anthony Tutt has filed this 42 U.S.C. § 1983 action against Coastal State Prison (CSP), Warden Morales, Care/Treatment Warden Owens, Medical Director Milton Head, Dr. Awe, Nurse Jones, Memorial Health, Chatham County Detention Center Officer Coreilus, Wilcox State Prison (WSP) Computation Department, and the Georgia Department of Corrections for failing to properly classify him due to his medical needs and providing inadequate medical care. Docs. 1 & 12. After screening, the Court provided Tutt with another chance to adequately plead both misclassification and denial of care claims against the individual defendants.

1

As a threshold matter, Tutt continues to name correctional facilities CSP and WSP and the Georgia Department of Corrections. But neither correctional facilities, *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1343 (11th Cir. 2003); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992), nor state agencies, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989), are entities subject to suit under 42 U.S.C. § 1983. The Department of Corrections, CSP, and WSP thus should be **DISMISSED** from the Complaint. Memorial Health too should be **DISMISSED** from the Complaint, as Tutt continues to affirmatively allege only that Memorial Health provided him with medical care and discharged him in stable condition. Doc. 12-1 at 3, 4.

At bottom, Tutt alleges that he was improperly classified starting in 2015 (given a 2012 court order he should have been sent to a transitional center and a 2014 reversal that he actually owed the State an additional 9 months' incarceration), that misclassification caused him distress (particularly in January 2016, when he grieved the issue), and his health has precipitously declined while Coastal State Prison (CSP) classification and medical staff have stood by and discounted or disregarded his distress

and pain. Doc. 12-1 at 1-4. He finally saw a neurology specialist, Dr. Joel A. Greenburg, who took his pain allegations seriously and referred him for surgery. *Id*. at 4. Then, on the way to surgery on July 17, 2016, *see* doc. 1 at 6, Officer Coreilus recklessly crashed the van he was driving and Tutt was further injured. Doc. 12-1 at 6 (explaining that because of his restraints and shackles, he was unable to brace for the collision and was "thrown against the steel safety cage"). The surgery was conducted "as scheduled," however, and was "successful." *Id*. at 7. Tutt was discharged to CSP and then, in October 2016, despite being in a neck brace and confined to a wheelchair, was loaded onto an evacuation bus, transferred to another prison, and forced to sleep on a gym floor for two weeks. *Id*. Upon returning to CSP, Tutt complained of excessive pain in the neck and back and migraines, but was provided with neither follow-up care nor discharge orders for follow-up treatment and physical therapy when he was eventually transferred to Chatham County Detention Center (CCDC). *Id*. at 9-10.

Liberally construed, Tutt levels claims of misclassification and denial of medical care against Warden Morales and the various medical staff at the hospital, as well as Eighth Amendment claims for failure to

3

protect against Officer Coreilus. Tutt signature-filed this action on July 29, 2018. Doc. 1. Thus, any claim arising before July 29, 2016 is barred by the two-year statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (the statute of limitations for § 1983 claims "is that which the State provides for personal-injury torts."); O.C.G.A. § 9-3-33 (under Georgia law, the statute of limitations for such claims is two years); *see Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*). By July 29, 2016, Tutt was aware of his misclassification and initial denial of medical care claims, as well as any personal injury tort or excessive force claims arising from the July 17, 2016 car accident itself. The two-year clock had thus already run by the time he filed his Complaint. Tutt's pre-July 29, 2016 claims should be **DISMISSED** as untimely.[1]

---

[1] Because the only claims against Officer Coreilus and Nurse Jones occurred before July 29, 2016 and thus are untimely, they too should be **DISMISSED** from the Complaint.

But Tutt also waves at later claims, which (liberally construed) include conditions of confinement and denial of medical care claims arising post-surgery. He alleges that, despite his ongoing complaints of pain, Dr. Awe, Medical Director Head, Warden Owens, and Warden Morales have all contributed to his inadequate care in violation of the Constitution within two years of the filing of his Complaint. Docs. 1 & 12. An inmate's right to be free from cruel and unusual punishment is only violated by inadequate care where a plaintiff both had an objectively serious medical need and some prison official or officials were deliberately indifferent to that need. *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010); *see generally Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia*, necessary medical care). Deliberate indifference, in turn, requires that a defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234 (*citing Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)).

Assuming that Tutt's status *pre*-spinal surgery is a serious medical need,[2] his allegations make clear that he was treated — albeit (in his view) in grossly deficient manner. He was seen by Dr. Awe repeatedly over several years and complained each time that he was not doing enough; he pursued those grievances to a consultation with the Warden himself to complain about Dr. Awe's chosen course of treatment; and, eventually, Dr. Awe referred him out to a specialist and to a surgeon. *E.g.*, doc. 12-1 at 4 & 11; doc. 12-2 at 3 (noting plaintiff had been referred for neurology consultation by Dr. Awe). A prisoner's mere disagreement with the type of medical care he receives is insufficient to support an Eighth Amendment violation. *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) "[T]he question whether an X-ray or additional diagnostic

---

[2] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *see, e.g., Hutchinson v. N.Y. State Corr. Officers*, 2003 WL 22056997 at * 5 (S.D.N.Y. Sept. 4, 2003) (a "condition of urgency, one that might produce death, degeneration or extreme pain"). Only "those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Even crediting plaintiff's allegations as true, Dr. Awe's years of (mis)diagnoses and delayed referral to a surgeon are mere malpractice. *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations."). Deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. *See Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). But plaintiff has affirmatively pled that he *was* treated, albeit (perhaps) negligently. Even crediting Tutt's sincere belief that Dr. Awe's treatment constituted grievous medical malpractice, malpractice does not amount to a

7

constitutional violation. Put differently, even if the alleged facts might support a state medical malpractice claim which could be brought in state court, such claims do not amount to constitutional violations.

Plaintiff's *post*-surgery denial of constitutionally adequate medical care and conditions of confinement are a thornier issue. Tutt's allegation that doctors' orders were blatantly disregarded during the October 2016 evacuation might sound in negligence — albeit gross negligence — where, despite being in a neck brace and wheelchair, he was evacuated by bus and made to sleep on a gym floor in filthy conditions mere weeks after spinal surgery. Doc. 12 -1 at 7. And while the CSP medical staff's failure to provide records or physical therapy orders to CCDC staff too may comprise no more than negligence, doc. 12-1 at 8, the Court cannot conclude that no constitutional violation occurred. *See Burks v. Teasdale*, 492 F. Supp. 650, 676 (W.D. Mo. 1980) ("inadequate, inaccurate and unprofessionally maintained medical records" can be so endemic at a facility as to be "constitutionally infirm"). Tutt alleges, after all, that he had an objectively serious medical need (status post-spinal surgery) of which staff (*i.e.*, Dr. Awe and Director Head) were subjectively aware, and that staff disregarded that risk to his detriment by carelessly evacuating him to an

8

inadequate facility and by transferring him without care for his treatment or recovery. That is enough — just barely — at this stage to warrant a response.

It is unclear, however, that any named defendant aside from Dr. Awe or Medical Director Head could possibly be responsible for these events. Wardens Morales and Owens certainly are not mentioned by name, and § 1983 claims require an allegation of a causal connection between a defendant's acts or omissions and the alleged constitutional deprivation. *See Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Such claims cannot be based upon theories of *respondeat superior* or vicarious liability. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Their mere supervisory role, without allegations connecting them to the allegedly unconstitutional acts/omissions of the Complaint, are insufficient to state a claim. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted). The Wardens should be **DISMISSED** from the Complaint.

In sum, Wardens Morales and Owens, Nurse Jones, Officer Coreilus, CSP, WSP, and the Georgia Department of Corrections should be **DISMISSED** from the Complaint. The Clerk, however, is **DIRECTED** to forward a copy of this Order along with Tutt's Complaint to the Marshal for service upon Dr. Awe and Medical Director Head so that they may respond to his surviving post-spinal surgery claims.

Tutt also requests the production of medical records and sentencing computation/calculation records. Docs. 10 & 11. In addition to being mooted by the Report and Recommendation, *see supra*, these requests are both premature and improperly filed. They have been improperly lodged with the Court rather than served in compliance with the Federal Rules of Civil Procedure. Discovery requests are *not* filed with the Court. Fed. R. Civ. P. 5(d) (initial disclosures and discovery requests/responses are *not* filed until they are used for a motion or the court orders them to be filed). Tutt's discovery motions are **DENIED**. Any further discovery requests germane to the operative Complaint must be served according to the rules of Civil Procedure, to which Tutt must adhere just like any other litigant. *See* Fed. R. Civ. P. 5(b) (describing procedure for service).

Meanwhile, it is time for plaintiff to pay his filing fee. Since his

PLRA paperwork reflects an average monthly balance of $12.60, doc. 6, he owes an initial partial filing fee of $2.52. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist"). His custodian (or designee) shall therefore remit $2.52 to the Court and shall set aside and remit 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[3]

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[3] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 12th day March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA