IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY TUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 418-183 |
| | ) | |
| DAVID MILTON, Medical Director, and | ) | |
| OLATUNJI AWE, Doctor, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, currently incarcerated at Chatham County Detention Center and formerly incarcerated at Coastal State Prison ("CSP"), is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case, filed pursuant to 42 U.S.C. § 1983.  Before the Court are the parties' cross-motions for summary judgment.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED** (doc. no. 32), Defendants' motion for summary judgment be **GRANTED** (doc. no. 30), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff originally named ten Defendants in his complaint.  However, as Plaintiff is proceeding IFP, the Court screened the original complaint and because of pleading deficiencies, ordered Plaintiff to file an amended complaint.  (See doc. no. 9.)  Upon screening the amended

complaint, all but Defendants Milton and Awe were dismissed. (See doc. nos. 12, 13, 16.) The Court allowed Plaintiff to proceed with two Eighth Amendment claims based on allegations of deliberate indifference. As clarified at Plaintiff's deposition, Plaintiff's remaining two claims are based on his transfer to Rogers State Prison ("RSP") from CSP during a hurricane evacuation, and post-surgery follow-up care ordered by the doctor who performed Plaintiff's spinal fusion surgery. (Pl.'s Dep., doc. no. 30-3, pp. 39-43.[1])

According to the Scheduling Notice, discovery closed on November 1, 2019, and the last day to file motions, excluding motions in limine, was November 30, 2019. (See doc. no. 22.) Because November 30, 2019, was a Saturday, under Fed. R. Civ. P. 6(a)(1), the deadline for filing motions automatically extended to Monday, December 2, 2019. Plaintiff filed his motion for summary judgment on November 25, 2019, (doc. no. 32), and Defendants filed their motion for summary judgment on December 2, 2019, (doc. no. 30). Accordingly, Plaintiff's opposition to Defendants' motion based on the argument it was untimely filed, (see doc. no. 35), is without merit.

When each party filed their respective motions for summary judgment, the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. nos. 31, 33.) Therefore, the notice

_____

[1]Because Plaintiff's deposition was filed in Minu-Script, the Court cites to the relevant deposition page number, not the page number assigned by the Court's docketing system.

requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[2]

## II.    FACTS

Because Plaintiff did not contradict Defendants' factual assertions with any affidavits or other admissible documentary evidence, the Court deems admitted all portions of Defendants' Statement of Undisputed Material Facts, (doc. no. 30-2), that have evidentiary support in the record and are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[3]  <u>See</u> Loc. R. 56.1; Fed. R. Civ. P. 56(e); <u>see also</u> <u>Williams v. Slack</u>, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); <u>Scoggins v. Arrow Trucking Co.</u>, 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) ("[A]ll unopposed fact statements supported by the evidentiary materials of record are deemed admitted).

Plaintiff's opposition papers consist of unsworn, conclusory allegations, none of which are admissible evidence for purposes of opposing Defendants' motion for summary judgment. <u>See</u> <u>Rowell v. BellSouth Corp.</u>, 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); <u>see also</u> <u>Harris</u>

---

[2]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its October 29, 2019 Order.  (Doc. no. 29, p. 2.)

[3]Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(1) & (4).

v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").  Nor is the amended complaint sworn under penalty of perjury or otherwise attested to as true under 28 U.S.C. § 1746.  (See doc. nos. 12-1, 12-2.)  However, Plaintiff provided sworn testimony at his deposition, and the Court will consider his testimony in its analysis.  (See Pl.'s Dep., doc. no. 30-3.)

Moreover, to the extent Plaintiff challenges the authenticity of the certified medical records offered in support of Defendants' motion for summary judgment because he claims he was not at CSP during that time period, (see doc. nos. 35, 35-1), he offers nothing to substantiate his allegations.  In fact, his sworn deposition testimony detailing the chronology of his surgery, subsequent recuperation at Augusta State Medical Prison, and return to CSP shows he would have been back at CSP in early August, 2016, well before the August 15 through August 23, 2016 CSP records he challenges.  (Pl.'s Dep., pp. 20, 24-25; doc. no. 30-5, pp. 2-7.)

Accordingly, the Court will review the record, including Plaintiff's sworn deposition, "to determine if there is, indeed, no genuine issue of material fact."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

## A.    Circumstances of Plaintiff's Medical Care

During the time period relevant to this lawsuit, Defendant David Milton, who has no medical training, was Health Services Administrator ("HSA") at CSP, serving as Chief

4

Medical Administrator for the CSP medical department but making no clinical decisions concerning inmate medical treatment.  (Milton Dec., doc. no. 30-6, ¶¶ 2-4.)  Defendant Olatunji Awe, M.D., is Medical Director at CSP, and provides medical care to inmates, as well as general supervision of other physicians and medical staff and periodic quality control review of inmate care administered by other medical providers.  (Awe Dec., doc. no. 30-4, ¶¶ 3-4.)

Plaintiff, while housed at CSP in July 2016, traveled to Atlanta Medical Center for spinal fusion surgery.  (Pl.'s Dep., pp. 20, 24.)  The surgeon in Atlanta recommended a follow-up appointment ninety days after surgery and participation in physical therapy ("PT").  (Id. at 25-27.)  When a CSP inmate needs outside care or non-routine treatment, the treating physician, here Dr. Awe, or his staff seeks authorization for treatment from Consultation Request to Utilization Management ("UM"), the entity with authority to approve or disapprove the request, as well as to decide who will provide the requested treatment and when.  (Awe Decl. ¶¶ 6-7.)  If approved, the appointments authorized by UM are arranged by an individual at UM or a CSP medical clerk, not by Dr. Awe or HSA Milton.   (Awe Dec. ¶¶ 6-8; Milton Dec. ¶¶ 6-8.)  Beyond making sure the medical records clerks entered requests for outside care or non-routine treatment and ensuring necessary medical records were available for approved services, HSA Milton had no further role in making a decision about whether an inmate would receive the requested services, who would provide them, or how a prisoner would be transported to receive services.  (Milton Dec. ¶¶ 7-8.)

On August 15, 2016, Dr. Awe prepared a consultation request for Plaintiff to have a post-surgery follow-up appointment with the surgeon at Atlanta Medical Center, as well as a request for a PT evaluation, both of which were entered into the Statewide Inmate Repository

& Information Database ("SCRIBE") system the next day.  (Awe Dec. ¶ 15.)  The follow-up appointment was approved September 26, 2016, and the PT consult was approved August 23, 2016.  (Doc. no. 30-5, pp. 3-4, 6-7.)  On August 24, 2016, Dr. Awe prepared a consultation request for Plaintiff to have PT, the request was put into SCRIBE the next day, and the PT was approved August 30, 2016.  (Id. at 9-11; Awe Dec. ¶ 16.)

In early October 2016, CSP had to be evacuated because of an approaching hurricane. (Pl.'s Dep., pp. 19, 24.)  As part of that evacuation, Plaintiff relocated to RSP from October 6 to October 12, 2016.  (Id. at 29; Awe Dec. ¶ 17.)  The Georgia Department of Corrections ("GDC") decides where prisoners are sent during an evacuation, and neither Dr. Awe nor HSA Milton had any input in deciding to send Plaintiff to RSP.  (Awe Dec. ¶ 12; Milton Dec. ¶ 12.) Plaintiff was able to board the evacuation bus with the aid of a cane, and his wheelchair accompanied him to RSP.  (Id. at 30.)

Upon his arrival at RSP, Plaintiff was assigned to sleep on a mattress on the gym floor, and the area where he and other CSP inmates were housed had no usable handicap accommodations, and the plumbing was either backed up or not working.  (Pl.'s Dep., pp. 29-31.)  Dr. Awe and HSA Milton were responsible for making sure the medical records for evacuated CSP prisoners were sent to RSP, and HSA Milton was also responsible for ensuring any prisoners who needed assistance with transportation received it.  (Awe Dec. ¶ 11; Milton Dec. ¶ 11.)  The Intrasystem Transfer Form from CSP that accompanied Plaintiff to RSP was signed by an RN, not either Defendant.  (Doc. no. 30-5, p. 13.)

Once Plaintiff left CSP, neither Dr. Awe nor HSA Milton had any contact with him at RSP.  (Awe Dec. ¶ 13; Milton Dec. ¶ 13; Pl.'s Dep., pp. 32, 39, 44.)  Plaintiff acknowledges

neither Defendant got on the evacuation bus with Plaintiff, and Plaintiff never saw either Defendant at RSP.  (Pl.'s Dep., p. 32.)  Dr. Awe did not have contact with anyone about Plaintiff's medical care or treatment while Plaintiff was at RSP.  (Awe Dec. ¶ 17.)  RSP was responsible for providing medical care to CSP inmates housed at RSP during the evacuation. (Awe Dec. ¶ 13.)  When Plaintiff ran out of pain medication at RSP, he informed a nurse on-site but was told he would have to wait until he returned to CSP to obtain more pills.  (Pl.'s Dep., pp. 31-32.)  Plaintiff does not know if the nurse informed Dr. Awe or HSA Milton about any of the housing issues or lack of medicine at RSP.  (Id. at 42-46.)

On October 17, 2016, Plaintiff informed Dr. Awe during a medical visit that he needed PT.  (Awe Dec. ¶ 18; doc. no. 30-5, p. 15.)  According to Plaintiff, he had two physical therapy sessions at CSP, but the sessions were discontinued.  (Pl.'s Dep., pp. 25, 52.)  Dr. Awe completed a consultation request for PT for a second time, and the request was put into SCRIBE three days later.  (Awe Dec. ¶ 18; doc. no. 30-5, pp. 16-17.)  The consultation request was approved on October 25, 2016.  (Doc. no. 30-5, p. 18.)  There is no record Plaintiff had his follow-up appointment with the surgeon in Atlanta or any additional PT based on the October 17th consultation request prior to his parole from GDC custody on November 17, 2016.  (Pl.'s Dep., p. 49.)

## B.    Grievance History

Plaintiff filed four grievances while at CSP.  (Rivers Dec., doc. no. 30-7, ¶ 21; Attach. 2, doc. no. 30-9.)  Three of those grievance - numbers 227556, 227557, and 223214 - involved disciplinary proceedings unrelated to the Eighth Amendment issues raised in this case.  (Rivers Dec. ¶ 21; doc. no. 30-9; Attachs. 3-5, doc. nos. 30-10, 30-11, 30-12.)  In the fourth grievance,

number 223657 dated July 13, 2016, Plaintiff grieved the assignment of a small wheelchair he contended was not suitable for his weight and size.  (Rivers Dec. ¶ 21; doc. no. 30-9; Attach. 6, doc. no. 30-13.)  As part of his requested resolution, Plaintiff asked he not be transferred for anything other than a medical reason and he be given "all medical help order[ed] by any Doctor involved test or release [him] so [he] can get needed help."  (Doc. no. 30-13.)  The Grievance Coordinator recommended denying the grievance on July 25, 2016, because Plaintiff was given a wheelchair suitable to his size and weight, could request any needed assistance in his dormitory, and was receiving a "well-documented series of care."  (Id. at 2.)  The Warden's Designee denied the grievance on August 1, 2016, and Plaintiff was notified of the denial on August 25, 2016.  (Id. at 2-3.)  Plaintiff did not file an appeal.  (Id.; Rivers Dec. ¶ 21; doc. no. 30-9.)

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has

8

the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is little more than a recitation of his claims and conclusory allegations which are insufficient to support a motion for summary judgment. First, in contravention of Local Rule 56.1, there is no separate, short, and concise statement of the material facts – supported by citation to the record – to which Plaintiff contends there is no genuine dispute to be tried. A motion may be summarily denied for failure to comply with the

9

Court's Local Rules. <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979)[4] (holding that failure to comply with the Local Rules may result in summary denial of motion).

Second, Plaintiff appears to concede that he is not entitled to summary judgment when he talks about what the record "will reflect" and suggests if the Court does not "see the most important facts" in his favor, "then allow a trial to see the facts." (Doc. no. 32, p. 5.)  Moreover, he asks the Court to conclude "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." (<u>Id.</u> at 6.)  However, for Plaintiff to prevail on his own motion at the summary judgment stage, he must show there is no "genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law. <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011).  Thus, by definition, if Plaintiff is arguing only that he states a cause of action or is relying on the prospect of a jury trial to evaluate the merits of his case, he is not entitled to summary judgment.

For these reasons and the reasons set forth below as to why Defendants are entitled to summary judgment, Plaintiff's motion for summary judgment should be **DENIED**.  (Doc. no. 32.)

C.     **Defendants' Motion for Summary Judgment**

Defendants contend they are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claims, and in the alternative, they are entitled to the protection of qualified

---

[4]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

immunity.  Defendants further claim that even if they are not entitled to summary judgment on the merits, Plaintiff's claims must be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing suit.  Plaintiff argues Defendants' motion should be denied because (1) it is untimely, (2) Defendants failed to make sure all of his medical needs were met during his recovery from spinal surgery and during the hurricane evacuation, and (3) he could not have exhausted administrative remedies because GDC policy allows only two pending grievances.[5]

### 1.      Defendants Are Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claims

#### a.      Deliberate Indifference Standard

The Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his

---

[5]As discussed in Part I, supra, Defendants timely filed their motion, and the Court need not further discuss Plaintiff's opposition on this point.

injuries" to prevail on any § 1983 claim).  To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007)  (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component that Defendants were deliberately indifferent, Plaintiff must offer some proof that Defendants:  (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence."  Melton, 841 F.3d at 1223.  "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good."  Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate,

or excessive as to shock the conscience or to be intolerable to fundamental fairness. <u>Rogers v.</u> <u>Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986). In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." <u>Hill</u>, 40 F.3d at 1188, *abrogated in part on other grounds by* <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 n.9 (2002); <u>see also</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In <u>Hope v.</u> <u>Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in <u>Hill</u>, but not <u>Hill</u>'s analysis of what constitutes a serious medical need of prisoners.").

### b. Defendants Had No Control Over Conditions at RSP

Plaintiff argues Defendants Milton and Awe should have ensured his medical needs were better met during the October 2016 hurricane evacuation that occurred while Plaintiff was recovering from his July 2016 spinal surgery. In particular, Plaintiff maintains the conditions at RSP - including sleeping on a mattress on the gym floor, broken plumbing, no handicap accommodations, and running out of pain pills - violated his Eighth Amendment rights. According to Plaintiff, Defendants should have made sure he was evacuated to a more suitable location, or at least made sure his medical needs were met during the approximately one week stay at RSP.

Fatal to Plaintiff's claim is his inability to show either Defendant had anything to do with deciding where to send him during an emergency evacuation, let alone show that either Defendant had subjective knowledge of the conditions at RSP about which Plaintiff complains. <u>See</u> <u>Farmer</u>, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.")  Plaintiff concedes neither Defendant accompanied him to RSP, and he never saw either Defendant at RSP.  (Pl.'s Dep., pp. 32, 39, 44.)  The Intrasystem Transfer Form from CSP that accompanied Plaintiff to RSP was signed by an RN, not either Defendant.  (Doc. no. 30-5, p. 13.)  Nor does Plaintiff have personal knowledge that either Defendant was ever informed about Plaintiff's concerns at RSP.  (Pl.'s Dep., pp. 42-46.)

On the other hand, both Defendants have provided sworn affidavits that they had nothing to do with deciding where Plaintiff was assigned during the evacuation and had no contact with Plaintiff during his week at RSP.  (Awe Dec. ¶¶ 12-13; Milton Dec. ¶¶ 12-13.) Nor did Dr. Awe have contact with anyone about Plaintiff's treatment at RSP, and RSP officials were responsible for providing medical care to CSP inmates who had been evacuated to RSP.  (Awe Dec. ¶¶ 13, 17.)  Accordingly, while the conditions at RSP described by Plaintiff may not have been comfortable for an inmate in a wheelchair approximately three months post-surgery,[6] Plaintiff cannot show either Defendant was subjectively aware of a serious risk to Plaintiff's health, let alone that they disregarded that risk by more than mere negligence. The record does not show either Defendant "acted with a sufficiently culpable state of mind" because they had no knowledge about, or control of, Plaintiff's medical treatment and/or living conditions at RSP, a location neither Defendant selected as an evacuation point for Plaintiff. See Chandler, 379 F.3d at 1290.  Accordingly, Defendants are entitled to summary judgment. See Melton, 841 F.3d at 1223.

---

[6]"[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d at 1289 (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

### c.   Defendants Were Not Deliberately Indifferent to Plaintiff's Follow-up Care

Plaintiff also argues Defendants were deliberately indifferent to his follow-up care because he did not receive regular PT or the ninety-day follow-up appointment his surgeon in Atlanta prescribed.  As with the claim based on the evacuation to RSP, Plaintiff's claim regarding follow-up care also fails because Plaintiff cannot satisfy the subjective component of his deliberate indifferent claim.

The undisputed facts show Dr. Awe filled out the required paperwork to obtain approval for Plaintiff to have a post-surgery follow-up appointment with the Atlanta surgeon, as well as for Plaintiff to receive PT, and those requests were approved.  (Awe Dec. ¶¶ 15-16; doc. no. 30-5, pp. 3-4, 6-7, 9-11.)  Plaintiff acknowledges that after his surgery, he received two physical therapy sessions at CSP.  (Pl.'s Dep., pp. 25, 52.)  The undisputed record also shows that beyond making sure such requests for approval of a follow-up appointment and PT were put in the SCRIBE system, HSA Milton had no role in making a decision about whether an inmate would receive the requested services, who would provide them, or how a prisoner would be transported to receive services.  (Milton Dec. ¶¶ 7-8.)  Indeed, in his position as Chief Medical Administrator, HSA Milton made no clinical decisions concerning inmate medical treatment.  (Id. ¶¶ 2-4.)  Moreover, once a request for outside care or non-routine treatment was approved by UM, as were the requests for Plaintiff by Dr. Awe, the authorized appointments were arranged by an individual at UM or a CSP medical clerk, not Dr. Awe or HSA Milton.  (Awe Dec. ¶¶ 6-8; Milton Dec. ¶¶ 6-8.)

15

Plaintiff repeatedly argues Dr. Awe and HSA Milton should have made sure the requests for PT and a follow-up appointment with the Atlanta surgeon were carried out. Yet there is nothing in the record to attribute knowledge to either Defendant that Plaintiff was not receiving the prescribed and approved PT and follow-up appointment. As to the PT, Plaintiff acknowledges having two sessions and does not report making Dr. Awe or HSA Milton aware he was not receiving PT until his October 17, 2016 appointment with Dr. Awe upon returning from RSP. (Pl.'s Dep., pp. 25, 52; Awe Dec. ¶ 18, doc. no. 30-5, p. 15.) When he did tell Dr. Awe about needing PT, Dr. Awe again completed a consultation request for PT, and that request was entered in SCRIBE and approved on October 26, 2016. (Awe Dec. ¶ 18, doc. no. 30-5, pp. 15-18.) The factual record is silent as to whether Plaintiff informed Dr. Awe he had not had a ninety-day follow-up appointment, but Plaintiff argues in his briefing a follow-up appointment had been scheduled sometime during the last of week of October. (Doc. no. 32, p. 5.) Plaintiff was paroled from GDC custody on November 17, 2016. (Pl.'s Dep., p. 49), and thus neither Defendant had any control over any aspect of Plaintiff's medical treatment beyond that date.

Because the record shows neither Defendant was aware Plaintiff was not receiving the approved PT or follow-up appointment until at least October 17, 2016, there can be no disregard of that risk as would be required to support a deliberate indifference claim. See Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."). Plaintiff has not shown a jury could find in his favor on this claim, and Defendants are entitled to summary judgment

Moreover, to the extent Plaintiff alleges liability for deliberate indifference based on a delay in receiving additional PT or a follow-up appointment with his Atlanta surgeon, he has failed to allege, let alone "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." See Hill, 40 F.3d at 1188. Stated otherwise, Plaintiff's claim also fails because he does not allege, let alone offer any evidence, he was injured by either Defendant's acts or omissions with respect to any delay in follow-up treatment. See Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698 (11th Cir. 2019) (*per curiam*).

In sum, Defendants' are entitled to summary judgment on Plaintiff's Eighth Amendment claim regarding his follow-up care.

### 2. Plaintiff Failed to Exhaust Administrative Remedies Prior to Filing

Even if Defendants were not entitled to summary judgment on the merits - and they are for the reasons explained above - Plaintiff's claims are subject to dismissal because he failed to exhaust administrative remedies prior to filing this lawsuit.

### a. The Legal Framework

Although the failure to exhaust administrative remedies is an affirmative defense typically raised in a motion to dismiss, it may also be raised in a motion for summary judgment. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). When raised in a motion for summary judgment, the Court should treat the exhaustion issue as if it were raised in a motion to dismiss, and the analysis does not result in an adjudication on the merits. See id. The Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust

administrative remedies, the defendant's motion will be granted.  See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

18

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### b.      The Administrative Grievance Procedure

Based on the date of the alleged incident, the administrative grievance procedure applicable in this case is the version of the GDC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (Rivers Dec. & Attach. 1, doc. no. 30-8.) Upon admission to the GDC, all prisoners receive an oral explanation of the grievance and

a written outline of the process in their Orientation Handbook, and prisoners may review the

entire GDC SOP for the grievance process in the law library of each GDC facility.  (Rivers

Dec. ¶¶ 7 -8.)

The administrative remedies procedure commences with the filing of the Original

Grievance, and the inmate has ten calendar days from "the date the offender knew, or should

have known, of the facts giving rise to the grievance" to sign the Original Grievance and give

it to a Counselor.  (Doc. no. 30-8, § VI(D)(1)-(4).)  "The complaint on the Grievance Form

must be a single issue/incident."  (Id. § VI(D)(2).)  Once the Counselor gives the grievance to

the Grievance Coordinator, they will screen it in order to determine whether to accept it or

recommend that the Warden reject it.  (Id. § VI(D)(3), (5)(a).)  If the Warden rejects the

grievance, the inmate may appeal the rejection to the Central Office.  (Id. § VI(D)(5)(f).)

If the Grievance Coordinator accepts the grievance or the Warden rejects the

coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint

a staff member to investigate the complaint.  (Id. § VI(D)(6).)  After the staff member prepares

a report, the Grievance Coordinator submits a recommended response to the Warden. (Id.) The

Warden or a designee reviews the grievance, the report, and the recommendation and issues a

decision in writing.  (Id.)  The Warden has forty days from the date the offender gave the

Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day

extension may be granted.  (Id. § VI(D)(7).)

The inmate then has seven calendar days from the date they receive the response to file

a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived

for good cause.  (Id. § VI(E)(2).)  If the Original Grievance is rejected, or if the time allowed

for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal.  (Id. §§ VI(E)(3)-(4).)  The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete.  (Id. § VI(E)(7).)

An inmate is limited to two active grievances.  (Id. § VI(B)(5)(a).)  In order to file a new grievance while he has two pending, the inmate must drop one of the outstanding grievances.  (Id. § VI(B)(5)(a)(1).)  If the inmate does not want to drop one of his outstanding grievances, the third grievance will not be processed.  (Id.)  The following three types of grievances do not count toward the two grievance limit:  (1) emergency grievances; (2) grievances that involve allegations of physical abuse with significant injury to the inmate or sexual assault; and (3) grievances that the Grievance Coordinator determines involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person.  (Id. § VI(B)(5)(b).)

### c.    Plaintiff's Failure to Exhaust

Plaintiff filed four grievances while at CSP, three of which - numbers 227556, 227557, and 223214 - involved disciplinary proceedings unrelated to the Eighth Amendment issues raised in this case.  (Rivers Dec. ¶ 21; doc. nos. 30-9 through 30-12.)  In the fourth grievance, number 223657 dated July 13, 2016, Plaintiff grieved the assignment of a small wheelchair he contended was not suitable for his weight and size and requested that he not be transferred for anything other than a medical reason and be given "all medical help order[ed] by any Doctor involved test or release [him] so [he] can get needed help."  (Rivers Dec. ¶ 21; doc. no. 30-9; doc. no. 30-13.)  The grievance was denied on August 1, 2016, and Plaintiff was notified of

21

the denial on August 25, 2016.  (Doc. no. 30-13, pp. 2-3.)  Plaintiff did not file an appeal.  (Id. at 3; Rivers Dec. ¶ 21; doc. no. 30-9.)

Plaintiff argues he was unable to file a timely grievance because he was only allowed to have two active grievances pending at once.  (Doc. no. 35, p. 6.)  However, grievance records show no active grievances pending as of August 31, 2016.  (Doc. no. 30-9.)  Nothing in the record shows Plaintiff was precluded from filing a grievance about his medical concerns after August 31st, and the hurricane evacuation did not occur until October 2016.  Moreover, the GDC grievance policy allowed options to overcome the two-grievance limit, including filing an emergency grievance, or dropping one of the pending grievances in order to file a new one.  (Doc. no. 30-8, § VI(B)(5)(a)(1) & (b).)  Plaintiff offers no explanation for his failure to utilize these options.  Nor does he offer any explanation for failing to appeal grievance 223657, the only grievance filed at CSP related to his medical care.  The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules.  Johnson, 418 F.3d at 1159.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would

22

> not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").  The record confirms Plaintiff did not exhaust his available administrative remedies, and thus, his claims would be subject to dismissal even if Defendants were not entitled to summary judgment on the merits.  See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### 3.    Qualified Immunity

Because Defendants are entitled to summary judgment on the merits of Plaintiff's claims, and the claims are otherwise subject to dismissal because Plaintiff failed to exhaust his available administrative remedies, the Court need not address Defendants' qualified immunity argument.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 32), Defendants' motion for summary

judgment be **GRANTED**, (doc. no. 30), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of April, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA